UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

ARLENE ROSARIO,

                             Plaintiff,

-against-

CAROLYN W. COLVIN,
Commissioner of Social Security,

                             Defendant.

------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**13-CV-5573 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

        Plaintiff Arlene Rosario brings this action pro se pursuant to 42 U.S.C. §§ 405(g)

and 1383(c), seeking judicial review of the Social Security Administration's (the "SSA")

decision that she is not disabled and therefore does not qualify for Social Security disability

benefits. Plaintiff argues that the SSA made four errors in denying her application for benefits:

It (1) improperly weighed the medical evidence in determining her residual functional capacity

("RFC"); (2) incorrectly assessed her credibility; (3) failed to consider an MRI conducted on

October 1, 2013, and (4) incorrectly found that she could perform jobs existing in significant

numbers in the national economy. Defendant Carolyn W. Colvin, the Commissioner of Social

Security, has filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c), and Plaintiff has filed an affidavit in opposition to Defendant's motion. (See

Def.'s Mem. of Law in Supp. of Mot. for J. on Pleadings ("Def.'s Mem.") (Dkt. 16); Pl.'s Aff. in

Opp'n to Def.'s Mot. ("Pl.'s Opp'n.") (Dkt. 13).) For the reasons set forth below, the

Commissioner's motion is GRANTED.

# I.   BACKGROUND

Plaintiff was born in 1966 (Administrative Rec. ("Rec.") (Dkt. 7) at 153), and received a high school education (id. at 157-58).  She last worked as a daycare attendant from 2006 to 2010, where she was required to walk, stand, and stoop for eight hours per day, and frequently lifted or carried up to ten pounds.  (Id. at 168.)  Plaintiff also worked as a health care assistant for two different clients.  From 2000 to 2002, she worked in an environment where she was required to walk or stand for five hours per day and lift up to one hundred pounds or more.  (Id. at 165.)  From 2002 to 2005, Plaintiff worked in an environment where she was required to walk or stand for eight hours per day and again lift up to 100 pounds or more.  (Id. at 167.)

In a February 15, 2011, Disability Report, Plaintiff claimed disability on the basis of back, neck, hand, and foot pain.  (Id. at 156-62.)  Although Plaintiff stopped working as of October 15, 2010, due to the closing of the daycare facility at which she was employed, Plaintiff states that she actually became unable to work on June 2, 2010, as a result of her conditions. (Id.)  Plaintiff reported taking Cyclobenzaprine, Gabapentin, Hydrocodone, Ibuprofen, Maloxicam, and Tramadol to alleviate her pain.  (Id. at 160.)

## A.    Medical Evidence

### 1.    Southside Medical Center

On May 11, 2010, Plaintiff visited Southside Medical Center, complaining of lower back and neck pain.  (Id. at 204, 238.)  Her doctor checked a box on an examination form indicating that Plaintiff had abnormalities in her back.  (Id. at 204.)  Plaintiff was prescribed Flexeril and Ibuprofen, and was instructed to apply heating and moisture packs to her back.  (Id.)

2

Plaintiff returned to Southside on June 1, 2010, once again complaining of lower back pain. (Id. at 205, 237.) An assessment of her back showed paraspinal muscle tenderness, and decreased range of motion. (Id.) Plaintiff was prescribed Tramadol. (Id.)

Plaintiff was again treated at Southside on July 12, 2010, where she complained of lower back and leg pain. (Id. at 240, 293.) Plaintiff described her lower back pain as radiating to her hips. (Id.) The attending physician marked on an examination form that Plaintiff had back abnormalities, and referred Plaintiff for X-rays of her lower back. (Id.) The results of the X-rays were "normal." (Id. at 202, 230.)

On June 30, 2011, Plaintiff returned to Southside, where she again complained of lower back pain. (Id. at 246.) The examining doctor stated on a progress note that Plaintiff's back showed abnormalities, including tenderness and decreased range of motion. (Id.) Plaintiff continued to be prescribed medications for her pain. (Id.)

2.      Dr. Tiffany Lee

On March 25, 2011, Plaintiff was consultatively examined by internist Dr. Tiffany Lee, at the request of Disability Determination Services. (See id. at 206-13.) Plaintiff complained to Dr. Lee about lower back, neck, hand, and foot pain. (Id. at 207.) Plaintiff stated that within the prior year her pain had worsened, specifically due to her work as a daycare attendant, where she exacerbated her back pain by picking up "a very large child." (Id.) Plaintiff reported being unable to complete the requirements of the job and also reported that her pain worsened with "changing from sitting to a standing position, prolonged walking, and prolonged sitting greater than 20 minutes." (Id.) She further asserted that her pain was only minimally relieved through the use of Bengay cream and heating pads. (Id.) Plaintiff stated that she had no history of depression, but admitted to having "depressive feelings." (Id.)

3

On physical examination, Plaintiff appeared to be in no acute distress and exhibited a normal gait and station. (Id. at 208-09.) She used no assistive devices for stability and was able to climb on to and off of the exam table, and rise from her chair. (Id. at 209.) There was no tenderness to palpation in her cervical spine, although Plaintiff exhibited a decreased range of motion in her neck, back, and "slightly in her hips secondary to muscle spasm." (Id. at 208-09.) Otherwise, Plaintiff showed normal range of movement in her extremities, normal alignment of her joints, and normal motor strength in her extremities bilaterally. (Id.) Based on the examination, Dr. Lee diagnosed Plaintiff with lumbago (lower back pain), probable muscle spasms, and neck pain, and advised Plaintiff to avoid activities that required heavy lifting, excessive bending, or squatting. (Id. at 209, 213.)

### 3. Dr. William Hand

On May 2, 2011, medical consultant Dr. William Hand reviewed all of the evidence in Plaintiff's file and found that, although Plaintiff suffered from a decreased range of motion in her cervical spine and hips (id. at 230), she was able to occasionally lift twenty pounds and frequently lift ten pounds (id. at 224). Further, Dr. Hand concluded that Plaintiff could stand, walk, or sit for about six hours in an eight-hour workday, and had no limitations on her ability to push or pull. (Id. at 224.) In addition, Dr. Hand found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (Id. at 225-27.)

### 4. Dr. George Walker

On May 25, 2011, medical consultant Dr. George Walker reviewed Plaintiff's file to determine her RFC. (Id. at 75-76.) Dr. Walker found that Plaintiff was capable of doing light work—that is, occasionally lifting twenty pounds, frequently lifting ten pounds, and sitting, standing, or walking for a total of about six hours in an eight-hour workday. (Id.) Dr. Walker

4

further found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (<u>Id.</u> at 76.)

     5.    <u>Grady Hospital</u>

On July 28, 2011, Plaintiff visited Grady Hospital, where she was examined by Dr. Elizabeth Billingsley and Dr. Carmen P. Mohan. (<u>Id.</u> at 242-43.) Plaintiff reported chronic back pain that was only slightly alleviated by her medications. (<u>Id.</u>) Upon examination, Plaintiff appeared to be in no acute distress, but did exhibit pain during a bilateral straight leg raise test. (<u>Id.</u> at 243.) The doctors referred Plaintiff to a physical therapist and to a pain specialist, and instructed her to begin back exercises. (<u>Id.</u>)

     6.    <u>Tessa Greene, D.C.</u>

On August 2, 2011, Plaintiff began chiropractic treatment with Dr. Tessa Greene, and upon examination, received an X-ray of her cervical spine. (<u>Id.</u> at 255.) The X-ray showed cervical degenerative changes. (<u>Id.</u>) A CT Scan or an MRI was suggested to quantify any central canal stenosis. (<u>Id.</u>)

In connection with Dr. Greene's treatment, Plaintiff completed several undated questionnaires pertaining to her functional abilities. (<u>See id.</u> at 247-54 (indicating that the questionnaires pertain to the period of August 2, 2011, through December 7, 2011).) Plaintiff reported dressing more slowly because of her back pain, and having difficulty getting out of her chair. (<u>Id.</u> at 248.) She identified "extreme difficulty" with completing household activities, squatting, lifting objects, walking two blocks, and rolling over in bed. (<u>Id.</u> at 249.) She stated that she could not sit or stand for more than half an hour and that she could only lift very light objects. (<u>Id.</u> at 250.) She indicated "severe difficulties" with opening tight jars, placing objects on overhead shelves, making her bed, carrying shopping bags, and caring for her hair. (<u>Id.</u>

at 252-53.) She also stated that she was "unable" to garden or do yard work, carry objects weighing over ten pounds, or engage in recreational activities requiring arm movement. (Id.)

Upon examination, Plaintiff showed a limited range of motion in her cervical and dorsolumbar spine. (See id. at 275.) Plaintiff continued chiropractic care at appointments on August 3, 5, 16, 24, and 31, 2011, during which she also noted pain in her left foot and both hands. (Id. at 269-73.) During her August 24 and 31 appointments, Plaintiff stated that her back pain worsened after walking one hour to pick up her granddaughter from school. (Id. at 269-70.)

Plaintiff resumed her chiropractic care with Dr. Greene at appointments on September 2, 13, 14, 21, and 28, 2011. (Id. at 263-68.) Plaintiff stated on September 13 that she continued to walk her granddaughter to and from school. (Id. at 267.) Plaintiff reported some relief on September 14, but noted that she had to soak both of her feet in salt water due to swelling. (Id. at 266.) On September 28, Plaintiff again indicated that she continued to walk her granddaughter to and from school, while noting that this walk increased her pain. (Id. at 264.)

On October 14, 2011, Plaintiff returned to Dr. Greene for chiropractic care, during which she discussed recent travel, where she was required to lift bags and do "a lot of walking." (Id. at 263.)

Plaintiff continued chiropractic care with Dr. Greene at appointments on November 5, 8, 15, and 30, 2011. (See id. at 259-62.) Plaintiff reported only temporary relief post-treatment on November 15, stating that the relief lasted for less than a full day. (Id. at 260.)

Plaintiff also met with Dr. Greene on December 2, 6, 7, 20, 21, and 27, 2011. (See id. at 256-58, 278-80.) On December 6, Plaintiff reported an exacerbation of symptoms after she had held a baby for several hours. (Id. at 257.) She noted on December 7 that her pain was so severe that she was unable to sleep through the night. (Id. at 256.) On December 20, after her

sleep had improved, Plaintiff stated that she felt "a little better." (Id. at 280.) On December 21, Plaintiff described swelling in both hands after blow-drying her hair, and indicated feeling severe pain while caring for her hair afterwards. (Id. at 279.) Plaintiff once again reported feeling "a little better" at her appointment on December 27. (Id. at 278.)

### B.     Other Evidence

#### 1.     Plaintiff's Testimony

At a February 23, 2012, hearing before Administrative Law Judge J. Samuel Childs (the "ALJ"), Plaintiff testified that she lived with her two children, ages seventeen and nineteen. (Id. at 47.) Plaintiff testified that she cooked occasionally, shopped for small items about once per month, dressed herself (although very slowly), drove short distances (although she had limited range of motion in her neck), and cared for her hair with difficulty due to the pain in her arms. (Id. at 49-52.) Plaintiff indicated that due to the pain she experienced in her right elbow, she could only lift a gallon of milk if she used both hands. (See id. at 40, 53.)

Plaintiff described severe pain in her neck and back that was mildly and temporarily alleviated through chiropractic care. (Id. at 33-34.) Plaintiff stated that she could not sit for prolonged periods due to lower back and neck pain, and that she had difficulties moving her arms and lifting objects. (Id. at 41.) Plaintiff further indicated that her back pain radiated into her arms and hands. (Id. at 41-42.) Plaintiff testified that her pain medications (Gabapentin and Nortriptyline), which she received from a pain clinic at Grady Hospital, caused her to feel dizzy and tired, and made her mouth dry. (Id. at 36-40.)

Plaintiff stated that she had left her job as a daycare worker because the daycare closed, although her pain made it difficult to work before the daycare closed. (Id. at 43.) She indicated that pain had caused her to miss work, on average, one day per month. (Id. at 43-44.) At the

7

time of the hearing, Plaintiff reported that she was receiving unemployment income, but only had six weeks of eligibility remaining. (Id. at 46.) She further indicated that she was seeking employment, and had interviewed for jobs, although her condition prevented her from being hired. (See id. at 46-47.)

## 2. Vocational Expert John D. Blakeman

John D. Blakeman, an impartial vocational expert, also testified during the hearing. (See id. at 61-68.) The ALJ asked him to consider a hypothetical individual, of the same age, and with the same educational and vocational background, as Plaintiff, and who was limited to light work. (Id. at 62-63.) The ALJ further limited the hypothetical individual to frequent bending, balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, but no climbing of ladders, ropes, or scaffolds. (Id.) Additionally, this hypothetical person was limited to having no direct exposure to hazardous conditions such as unprotected heights, dangerous machinery, or uneven surfaces. (Id.) This hypothetical individual was also limited to unskilled work activity, which the ALJ defined as simple and routine tasks involving no more than simple, short instructions, and few simple work-related decisions. (Id. at 63.) Mr. Blakeman testified that such an individual could not perform Plaintiff's prior job as a daycare worker, but could perform the jobs of cafeteria attendant, laundry sorter, and housekeeper or cleaner, which were available in significant numbers in the national economy. (Id. at 63-64.)

## 3. Addition Evidence Submitted to District Court

In her opposition, Plaintiff refers to certain evidence not included in the SSA record. This purported new evidence consists of information regarding an October 1, 2013, MRI, and nerve conduction studies performed on September 26, 2013, and October 4, 2013. (See Pl.'s Opp'n at 5.) Although Plaintiff describes this evidence, she did not submit it to the court.

8

## II. PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on February 15, 2011. (Rec. at 124-33.) The application was initially denied on May 2, 2011, and upon reconsideration on May 26, 2011. (Id. at 80-82, 86-90.) Plaintiff then requested a hearing before an administrative law judge (id. at 91-93), and the ALJ held a hearing on February 23, 2012, during which Plaintiff was represented by counsel (id. at 22-69). On May 29, 2012, the ALJ issued a written decision, concluding that Plaintiff was not disabled within the meaning of the Social Security Act, and denying Plaintiff's application for benefits. (Id. at 7-21.) Plaintiff requested that the SSA Appeals Council review the ALJ's unfavorable decision, and the Appeals Counsel denied the request for review on August 9, 2013, upholding the ALJ's decision. (Id. at 1-4.)

Plaintiff filed the instant action on October 8, 2013, seeking judicial review of the SSA's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).[1] (Compl. (Dkt. 1).) The Commissioner filed her Answer on February 7, 2014. (Answer (Dkt. 8).) The Commissioner then filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Not. of Mot. (Dkt. 15).)

## III. LEGAL STANDARDS

### A. Review of Final Determinations of the SSA

Under Rule 12(c), "a movant is entitled to judgment on the pleadings only if the movant establishes that 'no material issue of fact remains to be resolved and that [she] is entitled to

---

[1] Although Plaintiff originally applied for benefits in Georgia, Plaintiff has since relocated to New York, and filed her appeal of the ALJ's decision in this court. (See Compl. ¶ 2 (listing Plaintiff's residence in Brooklyn, New York).) The Social Security Act requires an individual seeking review of an ALJ decision to bring the action "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). Plaintiff has thus filed her appeal of the ALJ's decision in the correct venue. Cf. Purisima v. Astrue, No. 12-CV-3528 (WHP) (JLC), 2013 WL 772702, at *1 n.2 (S.D.N.Y. Mar. 1, 2013) (report and recommendation) (noting that plaintiff's claim was filed in New Jersey, but that venue for appeal was proper in Southern District of New York, where plaintiff resided at the time of filing complaint (citing 42 U.S.C. § 405(g))), adopted, 2013 WL 3055332 (S.D.N.Y. May 30, 2013).

judgment as a matter of law.'" Guzman v. Astrue, No. 09-CV-3928 (PKC), 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (quoting Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990)). "The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "It is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted). Thus, as long as (1) the ALJ has applied the correct legal standard, and (2) the ALJ's findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

## B.    Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the Social Security Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Social Security Act if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [the claimant] is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id.

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Social Security Act. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In Dixon v. Shalala, the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in . . . the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d 1019, 1022 (2d Cir. 1995) (internal citations omitted).

The "burden is on the claimant to prove that he is disabled." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (citation and internal quotation marks omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner to "show that

11

there is other gainful work in the national economy that the claimant can do." <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." <u>Pogozelski</u>, 2004 WL 1146059, at *10 (citing <u>Carroll v. Sec'y of Health & Human Servs.</u>, 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." <u>Id.</u>

## IV.    DISCUSSION

Plaintiff argues that the ALJ erred in concluding that she was not disabled under the Social Security Act. She does not appear to dispute the first three steps of the ALJ's five-step analysis: (1) that Plaintiff has not engaged in substantial gainful activity since February 15, 2011; (2) that Plaintiff suffers from severe impairments including degenerative disc disease of the lumbar and cervical spine; and (3) that Plaintiff does not suffer from an impairment or combination of impairments found on the Listing of Impairments.[2] (<u>See</u> Rec. at 12.)

---

[2] In considering the Commissioner's motion, the court notes that because Plaintiff is proceeding pro se, the court is "obliged to construe [her] pleadings and papers liberally." <u>LaBounty v. Adler</u>, 933 F.2d 121, 122 (2d Cir. 1991). Accordingly, the court has construed Plaintiff's submissions "to raise the strongest arguments that they suggest." <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994).

At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b),[3] and as modified by the ALJ's description, which included:

> the frequent ability for climbing ramps and stairs, no climbing of ladders, ropes and scaffolds, and frequent bending, balancing, stooping, kneeling, crouching and crawling. She should have no direct exposure to hazardous conditions including unprotected heights, dangerous machinery and uneven surfaces in part due to side effects of medications and credible effects of pain. The claimant is further limited to unskilled work, which is defined as simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes due to credible effects of pain and side effects of medications.

(Rec. at 13.) Plaintiff argues that the ALJ committed three errors in his determination of Plaintiff's RFC at step four (and upon which the ALJ partially relied for his conclusion at step five). She appears to assert that the ALJ (1) incorrectly determined that she could perform light work; (2) erred in his assessment of her credibility; and (3) failed to fully develop the record by not taking into account her later MRI results. Plaintiff also argues that the ALJ erred at step five in determining that there are jobs that exist in significant numbers in the national economy that she can perform. (See Rec. at 16.) Plaintiff also contends that the ALJ improperly relied on the vocational expert's testimony in making this determination. (See Pl.'s Opp'n at 6-8.)

### A.    Determination of RFC

Plaintiff first appears to argue that the ALJ incorrectly determined her RFC. The ALJ found that Plaintiff had the RFC to perform light work, with frequent climbing of ramps and stairs, no climbing of ladders, ropes, and scaffolds, and frequent bending, balancing, stooping,

---

[3] Light work is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

kneeling, crouching, and crawling. (Rec. at 15.) The ALJ further required that Plaintiff not have direct exposure to hazardous conditions, including unprotected heights, dangerous machinery, and uneven surfaces, as well as limiting to "unskilled" work. (Id.)

       1.    Evaluation of Medical Evidence

Plaintiff argues that the objective medical evidence does not support the finding that she can perform light work. She cites the abnormalities in her back noted in the Southside Hospital records, the decreased range of motion in her back recited by Dr. Lee, and the X-ray of cervical degenerative changes described by Dr. Greene. (See Pl.'s Opp'n at 10-14.)

Plaintiff does not have a treating physician, which is defined in 20 C.F.R. § 404.1527(c)(2) as a medical professional who may "provide a detailed, longitudinal picture of [claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Accordingly, the ALJ did not give controlling weight to any doctor's opinion under the treating-physician rule. (Rec. at 14-15.)

Pursuant to 20 C.F.R. § 404.1527(c), regardless of source, the ALJ must evaluate every medical opinion received. In deciding the weight assigned to any medical opinion (i.e., when there is no treating physician, as here) the court weighs factors such as the (1) examining relationship; (2) the treatment relationship (i.e., length of treatment and nature and extent of the treatment relationship); (3) supportability; (4) consistency; (5) specialization; and (6) other factors. See 20 C.F.R. § 404.1527(c).

The ALJ's decision includes a detailed overview of each source's findings and conclusions. (See Rec. at 14-15.) After thoroughly reviewing the medical evidence, the ALJ

14

concluded that "the claimant has degenerative disc disease of the lumbar and cervical spine, which is a severe impairment." (Id. at 14.) However, according to the ALJ, this impairment did not rise to the "extent of being disabling and precluding [Plaintiff's] ability to perform all work activity." (Id.) Further, although Plaintiff's degenerative disc disease had caused her to require some treatment, "[t]here [was] no evidence that the claimant required any procedures indicative of severe pain or significant findings," such as surgical intervention. (Id. at 15.) Therefore, the ALJ concluded that Plaintiff's claim that she could not work at all was belied by the "minimal medical treatment for her back and neck impairment," as reflected in the medical records. (Id. at 14.)

The court finds that the ALJ properly weighed the medical evidence and gave sufficient reasons for his decision. Dr. Greene is a chiropractor, and therefore "cannot be considered [a] treating physician[] for the purpose of applying the treating-physician rule." Mack v. Comm'r of Soc. Sec., No. 12-CV-186 (PKC), 2013 WL 5425730, at *10 (S.D.N.Y. Sept. 27, 2013); see also Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir. 1995) (explaining that chiropractor's opinion was not a medical opinion and not entitled to controlling weight under treating-physician rule). This is because under SSA regulations, chiropractors, like Dr. Greene, are not considered "acceptable medical sources," and thus their opinions are not entitled to controlling weight under the treating-physician rule. See 20 C.F.R. § 404.1513(a) ("Acceptable medical sources are—(1) Licensed physicians (medical or osteopathic doctors); (2) Licensed or certified psychologists . . . ; (3) Licensed optometrists . . . ; (4) Licensed podiatrists . . . ; and (5) Qualified speech-language pathologists . . . ."); Id. § 404.1513(d)(1) (defining evidence from chiropractors as a type of evidence from an "other source," which can be used "to show the severity of your impairment(s) and how it affects your ability to work"). Accordingly, the ALJ correctly did not

15

give Dr. Greene's opinion controlling weight under the treating-physician rule, and appropriately considered Dr. Greene's opinion along with all other medical opinions in the record.

Plaintiff's medical records show that she saw all other physicians on a limited basis, for only consultative visits or diagnostic tests, and not ongoing treatment. (See Rec. at 197-99, 202-05, 206-13, 223-30, 236-41, 242-43, 245-46.) The ALJ properly weighed all of the medical evidence (including records from Dr. Greene), ultimately concluding that Plaintiff's degenerative disc disease had required "minimal" treatment and caused "some limitations," but that there was no evidence of "significant [medical] findings" or "significant functional limitations."[4]  In short, the ALJ appropriately weighed the medical evidence and gave reasons for his determination in accordance with 20 C.F.R. §§ 404.1527 and 416.927.

### 2.    Assessment of Plaintiff's Credibility

Plaintiff next argues that the ALJ failed to properly evaluate her subjective accounts of pain. (See Pl.'s Opp'n at 6-9.) The ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely credible to the extent they are inconsistent with" the RFC as determined by the ALJ. (Rec. at 14.)

When evaluating a claimant's credibility, the ALJ's reasoning must be "'set forth with sufficient specificity to permit intelligible plenary review of the record.'" Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 350 (E.D.N.Y. 2010) (quoting Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988)). An ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49

---

[4]  In his decision, the ALJ did not expressly mention the evidence submitted by Grady Hospital, but this error is immaterial, as the records submitted by Grady were duplicative of and consistent with the information from the other medical sources expressly mentioned by the ALJ. See Perez v. Astrue, 907 F. Supp. 2d 266, 273 (N.D.N.Y. 2012) ("[A]lthough the hearing officer should fully develop the record, he is not required to discuss all the evidence submitted, and his failure to cite specific evidence does not indicate that it was not considered.").

(2d Cir. 2010) (per curiam). The regulations provide a two-step process to evaluate a claimant's credibility. See 20 C.F.R. § 404.1529(b). First, the ALJ must consider whether medical signs and laboratory findings show the existence of a medical impairment which "could reasonably be expected to produce the pain or other symptoms alleged." Id. If the statements about pain or other symptoms are not supported by medical signs or laboratory findings, they cannot alone establish that a claimant is disabled. See 20 C.F.R. § 404.1529(a).

When the medical evidence alone does not substantiate a claimant's subjective complaints of pain, the ALJ must evaluate the credibility of the claimant's statements by assessing the record in light of the following factors: (1) claimant's daily activities; (2) the location, duration, frequency, and intensity of claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate claimant's pain or other symptoms; (5) treatment, other than medication, claimant receives or has received for relief of pain or other symptoms; (6) any measures taken by claimant to relieve the symptoms; and (7) other factors concerning claimant's functional limitations and restrictions due to claimant's symptoms. See 20 C.F.R. § 404.1529(c)(3); see also Hilsdorf, 724 F. Supp. 2d at 349-50.

If the medical evidence does support the existence of an impairment that could reasonably be expected to produce the claimant's claimed symptoms, the ALJ must proceed to the second step and evaluate the "intensity and persistence" of the claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c); see also, e.g., Brown v. Colvin, 47 F. Supp. 3d 180, 186-87 (W.D.N.Y. 2014) (describing two-step analysis). At this second step, the ALJ must consider both objective medical evidence as well as other evidence that may suggest a "greater severity of impairment

than can be shown by objective evidence alone." 20 C.F.R. § 404.1529(c)(3). In other words, the ALJ must consider a claimant's statements regarding the "intensity, persistence, and limiting effects" of symptoms "in relation to the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

Here, the objective evidence did not corroborate Plaintiff's allegations to the extent alleged. Plaintiff stated in her testimony that she experienced severe pain in her neck and back that was only mildly alleviated for short periods of time. (Rec. at 33-34.) She also reported interrupted sleep (id. at 257), and an inability to perform daily household activities (id. at 249). During the consultative examination by Dr. Lee, however, Plaintiff exhibited a normal gait and station, used no assistive devices, and had no difficulty climbing on to and off of the examination table or rising from her chair. (Id. at 208-09.) Although Dr. Lee found that Plaintiff had lumbago, probable muscle spasms, and a slightly decreased range of motion, the results of the exam do not support Plaintiff's subjective complaints. (Id.) Further, although Plaintiff complained that her neck, shoulder, and lower back pain was severe during an October 14, 2011, appointment with Dr. Greene, Dr. Greene also noted that Plaintiff tolerated therapy "well" and indicated that treatment would continue. (Id. at 263.) Indeed, the ALJ noted that Dr. Greene's records show that Plaintiff "was experiencing a slow improvement in her condition with this chiropractic care." (Id. at 15.)

Because the medical evidence did not corroborate Plaintiff's complaints to the extent alleged, the ALJ evaluated the credibility of Plaintiff's statements regarding her symptoms and found that her allegations of disabling symptoms were not fully credible. (Id. at 13-15.) In doing so, the ALJ considered the seven aforementioned factors.

The ALJ first noted that Plaintiff partakes in many daily activities which would be inconsistent with having a disability: Plaintiff dresses independently, cleans dishes, does laundry, cooks, shops, occasionally drives, and could, although with some difficulty, lift a gallon of milk. (Id. at 14.)

The ALJ also concluded that Plaintiff's collection of unemployment benefits, which required her to acknowledge that she was ready, willing, and able to do work, were at odds with her claim of disability. (Id. at 14, 46; see also id. at 126 (listing unemployment payments ongoing through April 2012).) See Felix v. Astrue, No 11-CV-3697 (KAM), 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012) ("Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination."). Plaintiff continued to attend job interviews for a year after she left her position at the daycare, and stated that she was unable to gain employment because employers looked unfavorably upon her conditions (Rec. at 46); although she likely continued to push herself because of her economic situation, one who is disabled likely cannot certify to the appropriate state agency that she is ready, willing, and able to gain employment. As the ALJ concluded, the fact that Plaintiff has made inconsistent allegations to different government agencies for purposes of obtaining benefits goes directly to her credibility. (Id. at 14.)

The ALJ also noted that Plaintiff continued to work at the daycare center and do strenuous activities during the time in which she claimed to be disabled, and although she testified to physical impairments during this time, she ultimately stopped working because the daycare closed, and not because of her back pain. (Id. at 13; see also id. at 157 (Plaintiff's

benefits application stating she left the daycare in October 2010 because it "closed").) The activities performed by Plaintiff within the course of employment, and the continuation of employment despite her alleged condition, further indicate a lack of credibility. (Id. at 14.)

There is substantial evidence to support the ALJ's determination that Plaintiff's complaints are not fully credible. An ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment in light of the medical findings and other evidence. See Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). "'It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" Aponte v. Sec'y, Dep't of Health and Human Servs. of U.S., 728 F.2d 588, 591 (2d Cir. 1984) (alteration in original) (quoting Carroll, 705 F.2d at 642).

### 3. Consideration of New Evidence

In her opposition, Plaintiff also refers to an October 1, 2013, MRI, and nerve conduction studies performed on September 26, 2013, and October 4, 2013, that were not submitted to the SSA, and argues that the court should consider this evidence in adjudicating her appeal. (See Pl.'s Opp'n at 5-6.) Plaintiff's argument, however, fails.[5]

The Social Security Act provides that "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); see also Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir. 1991) (applying three-part test for evidence

---

[5] Plaintiff also now alleges carpal tunnel syndrome, major depression, panic disorder, and a history of abuse. (See Pl.'s Opp'n at 5, 9-10.) Plaintiff did not raise these alleged impairments during the proceedings in the SSA. Should she choose to do so, Plaintiff may file a new Social Security claim with evidence regarding how these impairments render her disabled. See 20 C.F.R. § 404.620(a)(2).

submitted to the district court: the evidence must be (1) new and (2) material, and (3) there must be good cause for the claimant's failure to present the evidence earlier); Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988) (same).

Plaintiff's submissions to the court do not satisfy this standard. Although Plaintiff may have good cause for the failure to previously incorporate the new evidence into her disability application due to her lack of health insurance (see Pl.'s Opp'n at 1), the MRI results and the nerve conduction studies are not material to her case, as they occurred nearly seventeen months after the ALJ's decision.[6] See Vilardi v. Astrue, 447 F. App'x 271, 272 (2d Cir. 2012) (summary order) (medical evidence from seven months after the relevant time period "is of little value"); Cohen v. Astrue, No. 07-CV-535 (DAB) (HBP), 2011 WL 2565659, at *2, 4, 19 (S.D.N.Y. May 17, 2011) (report and recommendation) (records created after the relevant time period are "not relevant" to district court's review of SSA's decision), adopted, 2011 WL 2565309 (S.D.N.Y. June 28, 2011).

### B.      Reliance on the Vocational Expert

Plaintiff also argues that the ALJ erred at step five in finding that she could perform light work (as further modified by the ALJ) as a cafeteria attendant, laundry sorter, or housekeeper or cleaner. (See Pl.'s Opp'n at 6-9.) In reaching this determination, the ALJ appropriately relied upon the testimony of vocational expert John D. Blakeman.[7] (Rec. at 63-64.) The foregoing positions all constitute light and unskilled work, which are available in significant numbers in the

---

[6] In addition, Plaintiff failed to provide to the court the actual records providing the new evidence that she describes in her opposition.

[7] Mr. Blakeman testified to the number of jobs available to a hypothetical individual, similar to Plaintiff, in both the national economy and in Georgia specifically. Pursuant to 42 U.S.C. § 423(d)(2), "'work which exists in the national economy' means work which exists in significant numbers either in the region where [claimant] lives or in several regions of the country." Here, the three occupations Mr. Blakeman identified that were available to Plaintiff are likely found in significant numbers in various regions of the country, including New York City. Regardless, the vocational expert expressly testified that the relevant positions exist in significant numbers in the national economy.

national economy. (Id. at 16.) An ALJ may rely on a vocational expert to determine whether there are jobs in the national economy that Plaintiff could perform given her vocational factors and RFC. See Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); 20 C.F.R. § 416.966(e).

Plaintiff objects to the ALJ's finding, arguing that she lacks the ability to perform the physical tasks required by these three positions. (See Pl.'s Opp'n at 6-9.) Plaintiff's argument is based on the assertion that the ALJ's RFC determination was incorrect. Although Plaintiff again alleges that her RFC is inappropriate, she does not point to a specific way the ALJ failed to consider all relevant medical evidence (other than the MRI and nerve studies discussed supra), or to contemplate further limitations to her RFC.[8] (See id. at 10-17.) Plaintiff's allegations, in contrast to the ALJ's well-reasoned decision, are merely conclusory statements regarding her inability to do light work. Plaintiff has not identified any medical evidence in the record contradicting the ALJ's RFC determination. Therefore, the court concludes that substantial evidence supported the ALJ's conclusion at step five.

---

[8] Once again, if Plaintiff's condition has worsened, she can file a new claim with the SSA. See 20 C.F.R. § 404.620(a)(2).

## V.   CONCLUSION

For the reasons set forth above, substantial evidence supports the ALJ's determination that Plaintiff is not disabled and is capable of doing light work as described in the ALJ's decision. The Commissioner's motion for judgment on the pleadings is GRANTED. The Clerk of Court is respectfully directed to enter judgment for the Commissioner and to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
   June 22, 2015

NICHOLAS G. GARAUFIS
United States District Judge